

# IN THE
# TENTH COURT OF APPEALS

## No. 10-13-00384-CR

**TARIUS MANUERE,**

Appellant

 **v.**

**THE STATE OF TEXAS,**

Appellee

**From the County Court at Law**
**Navarro County, Texas**
**Trial Court No. C34890**

## MEMORANDUM OPINION

In six issues, appellant, Tarius Manuere, challenges his conviction for aggravated sexual assault of a child. *See* TEX. PENAL CODE ANN. § 22.021(a)(2)(B) (West Supp. 2014). We affirm.

## I.    BACKGROUND[1]

On January 8, 2013, K.E. made an outcry of sexual abuse to her aunt, Lisa Thatcher, that her step-father, Noah Manuere, and her step-uncle, appellant, were both abusing her.[2]  Thatcher relayed this information to K.E.'s mother, who proceeded to tell Noah. K.E. and her mother then went to the Corsicana Police Department to make a report of sexual abuse to Detective Ronni Phillips.  After making the report, K.E. and her mother discovered that Noah was gone.

K.E. made additional outcry statements against appellant and Noah to forensic interviewer Lydia Bailey.  Thereafter, Detective Phillips obtained arrest warrants for appellant and Noah.  The police went to the homes of appellant and Noah, talked with family members, and went to their place of employment; however, police were unable to locate the men.[3]  In response, the Corsicana Police Department then contacted Homeland Security to flag both men in the event that they had fled the jurisdiction.

---

[1] As this is a memorandum opinion and the parties are familiar with the facts, we only recite those facts that are necessary to the disposition of the case.  *See* TEX. R. APP. P. 47.1, 47.4.

[2] Noah is not a party to this appeal; rather, his appeal was affirmed by this Court earlier this year. *See generally Manuere v. State*, No. 10-14-00123-CR, 2015 Tex. App. LEXIS 374 (Tex. App.—Waco Jan. 15, 2015, no pet.) (mem. op., not designated for publication).

[3] Testimony from the human-resource department at the company where both men worked revealed that appellant and Noah both left work abruptly, before the end of their shift, did not clock out, did not make arrangements to take vacation, and did not notify their employer.  Neither appellant nor Noah contacted their employer after January 8, 2013.

In the meantime, a medical examination of K.E. revealed that she was pregnant and that Noah was the father. Accordingly, police intensified the search for appellant and Noah. Detective Phillips testified that they soon learned that appellant and Noah had bought one-way tickets to Hawaii and had not contacted friends or family since they fled from Corsicana, Texas. Appellant and Noah were eventually apprehended in Hawaii in March of 2013.

Appellant was subsequently charged by indictment with the continuous sexual abuse of a young child or children. *See* TEX. PENAL CODE ANN. § 21.02 (West Supp. 2014). This case proceeded to trial, where numerous witnesses testified. At the conclusion of the evidence, the jury found appellant guilty of the lesser-included offense of aggravated sexual assault of a child, *see id.* § 22.021(a)(2)(B), and sentenced appellant to twenty-five years' incarceration in the Institutional Division of the Texas Department of Criminal Justice. The trial court certified appellant's right of appeal, and this appeal followed.

## II. THE CHILD VICTIM'S OUTCRY STATEMENT

In his first issue, appellant contends that the trial court abused its discretion in admitting evidence of an alleged hearsay outcry statement. Specifically, appellant complains that the trial court allowed the designated outcry witness, Bailey, to testify about four instances of sexual abuse when the State had only given notice of three instances. The State concedes that it only provided notice of three instances; however, the State argues that appellant has not preserved this issue for review. We agree.

In its notice of intent to introduce the child victim's hearsay outcry statements, the State noted that Bailey would testify about an incident of sexual abuse at a lake and two incidents of sexual abuse at appellant's house. However, during trial, the State sought to introduce into evidence a document created by Bailey during her forensic interview of the child. This document specifically listed four instances of sexual abuse that the child victim had described—two instances at appellant's house, one instance at Lake Halbert, and another instance at the child victim's house. In objecting to the exhibit, appellant argued the following:

> Your Honor, I don't have a problem with it as far as authentication. What I do have a problem with is, the fact that the State didn't—didn't disclose it to me per the Discovery Order. They didn't share it with me as evidence. It's a surprise so I'm going to object to it being admitted as a surprise at trial.

The State responded,

> Judge, he's watched the video twice, starting this Summer. You can watch—when you watch the video, you see that document's created, the document is in the envelope right next to the computer available for [defense counsel]. If he didn't inspect the contents, I can't force him to do that. It was available.

Thereafter, the trial court overruled appellant's objection.

Based on our review of the record, we conclude that appellant has failed to preserve this issue for review. As mentioned above, appellant's objection centered on the allegation that the State had not provided him with the exhibit—a contention that was refuted by the State. Appellant did not argue that the State had failed to provide him

with notice of a fourth instance of sexual abuse perpetrated by appellant, nor did he lodge a hearsay objection to the fourth instance of sexual abuse or request a continuance on the basis of surprise. *See Martin v. State*, 176 S.W.3d 887, 900-01 (Tex. App.—Fort Worth 2005, no pet.) (determining that the defendant "waived any complaint that he was surprised by the State's notice" when he did not request a continuance); *see also Dixon v. State*, 2 S.W.3d 263, 273 (Tex. Crim. App. 1999) ("[A]n objection stating one legal theory may not be used to support a different legal theory on appeal."); *Wright v. State*, 154 S.W.3d 235, 241 (Tex. App.—Texarkana, pet. ref'd) ("Where a trial objection does not comport with the issue raised on appeal, the appellant has preserved nothing for review."). We also note that the record demonstrates that appellant's counsel and witnesses frequently referenced all four instances of sexual abuse throughout trial. *See Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004); *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("Our rule . . . is that overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling."); *see also Taylor v. State*, No. 10-14-00033-CR, 2015 Tex. App. LEXIS 7939, at **8-9 (Tex. App.—Waco July 30, 2015, no pet. h.) (mem. op., not designated for publication) ("Therefore, even if it was error to admit the complained-of testimony, such error was cured because the same evidence was admitted elsewhere without objection.").

Based on the foregoing, we conclude that appellant has failed to preserve this complaint for review. *See* Tex. R. App. P. 33.1(a); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex.

Crim. App. 2002); *Dixon*, 2 S.W.3d at 273; *Martin*, 176 S.W.3d at 900-01; *Wright*, 154 S.W.3d at 241; *see also Lane*, 151 S.W.3d at 193; *Leday*, 983 S.W.2d at 718. We overrule appellant's first issue.

### III.    THE TRIAL COURT'S STANDING DISCOVERY ORDER

In his second issue, appellant asserts that the trial court abused its discretion in admitting evidence of appellant's flight. Appellant argues that the admission of evidence regarding his flight to avoid prosecution violated numerous provisions of the United States Constitution, the Texas Rules of Evidence, and the Texas Code of Criminal Procedure, as well as the trial court's standard discovery order.

### A.    Standard of Review

We review a trial court's admission or exclusion of evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court abuses its discretion if it acts arbitrarily or unreasonably, without reference to any guiding rules of principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). When considering a trial court's decision to admit or exclude evidence, we will not reverse the trial court's ruling unless it falls outside the "zone of reasonable disagreement." *Id.* at 391; *see Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003).

**B.    Discussion**

Here, appellant complains that the trial court should not have admitted evidence of his flight to avoid prosecution because the State did not provide notice of its intent to introduce evidence of extraneous acts at least ten days prior to trial.  We disagree.

It is well settled that flight is admissible as a circumstance from which an inference of guilt may be drawn.  *See Devoe v. State*, 354 S.W.3d 457, 470 (Tex. Crim. App. 2011); *see also Clay v. State*, 240 S.W.3d 895, 905 n.11 (Tex. Crim. App. 2007); *Clayton v. State*, 235 S.W.3d 772, 780 (Tex. Crim. App. 2007).  "To support the admission of evidence of escape from custody or flight[,] it must appear that the escape or flight have some legal relevance to the offense under prosecution."  *Bigby v. State*, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994); *see Rumbaugh v. State*, 629 S.W.2d 747, 752 (Tex. Crim. App. 1982); *see also Carvajal v. State*, No. 04-00-00132-CR, 2001 Tex. App. LEXIS 1670, at **6-7 (Tex. App.—San Antonio Mar. 14, 2001, pet. ref'd) (not designated for publication).  "To have such evidence excluded under relevancy challenges, the burden shifts to the defendant to show affirmatively the escape and flight directly connected to some other transaction and further that it was not connected with the offense at trial."  *Bigby*, 892 S.W.2d at 883; *see Rumbaugh*, 629 S.W.2d at 752; *see also Villegas v. State*, No. 04-02-00866-CR, 2004 Tex. App. LEXIS 308, at *4 (Tex. App.—San Antonio Jan. 14, 2004, pet. ref'd) (not designated for publication).

The evidence adduced at trial shows that, upon learning that K.E.'s mother had made a police report of appellant's sexual abuse of K.E., appellant abandoned his job, did not return home, did not contact his family, bought a one-way ticket to Hawaii, fled the jurisdiction, and was eventually discovered in Hawaii by law enforcement. The State argued that these circumstances proved beyond a reasonable doubt that appellant had fled the jurisdiction to avoid prosecution. On the other hand, appellant called witnesses to testify that he was merely helping Noah, who was also charged with the sexual assault of K.E., leave the jurisdiction. Nevertheless, the evidence presented by appellant does not affirmatively show that his flight was directly connected to some other transaction. *See Bigby*, 892 S.W.2d at 883; *Rumbaugh*, 629 S.W.2d at 752; *see also Villegas*, 2004 Tex. App. LEXIS 308, at *4. Rather, the flight evidence demonstrated appellant's intent to flee the jurisdiction with his brother to avoid being prosecuted in this case. Therefore, we conclude that the flight evidence was properly admitted as a circumstance from which an inference of guilt could have been drawn by the jury.[4] *See Devoe*, 354 S.W.3d at 470; *Clay*, 240 S.W.3d at 905 n.11; *Clayton*, 235 S.W.3d at 780. And as such, we cannot say that the trial court abused its discretion in admitting evidence of appellant's flight. *See Martinez*, 327 S.W.3d at 736; *Manning*, 114 S.W.3d at 926; *see also Montgomery*, 810 S.W.2d at 380. Accordingly, we overrule appellant's second issue.

---

[4] We also note that appellant's notice and surprise arguments are undermined by the fact that the same information was contained within the offense report, which was provided to appellant by the State and was admitted as Defendant's Exhibit 2.

## IV.    LIMITING INSTRUCTION

In his third issue, appellant argues that the trial court erred in failing to issue a limiting instruction in the jury charge regarding the jury's use of the flight evidence. During the charge conference, appellant did not object to the trial court's failure to include a limiting instruction regarding the jury's use of the flight evidence; thus, if the trial court erred, appellant has to show egregious harm before reversal is warranted. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).

Texas Rule of Evidence 105(a) provides that "[w]hen evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." TEX. R. EVID. 105(a); *see Hammock v. State*, 46 S.W.3d 889, 892 (Tex. Crim. App. 2001). "The language of Rule 105(a) requires, upon proper request, a limiting instruction to be given at the time the evidence is admitted." *Hammock*, 46 S.W.3d at 894; *see Rankin v. State*, 974 S.W.2d 707, 713 (Tex. Crim. App. 1996) (op. on orig. submission). However, the Court of Criminal Appeals has held that "a limiting instruction is not required when evidence is admitted as same-transaction contextual evidence." *Devoe*, 354 S.W.3d at 471 (citing *Castaldo v. State*, 78 S.W.3d 345, 352 (Tex. Crim. App. 2002)); *see Wesbrook v. State*, 29 S.W.3d 103, 114-15 (Tex. Crim. App. 2000). And when no limiting instruction is given, the jury considers the evidence for all purposes and no instruction is needed in the charge. *Hammock*, 46 S.W.3d at 895.

Here, appellant was charged with the continuous sexual abuse of a child, though he was ultimately convicted of the lesser-included offense of aggravated sexual assault of a child. In any event, as explained earlier, the flight evidence demonstrated appellant's intent to flee the jurisdiction with his brother to avoid being prosecuted in this case and, thus, was properly admitted as a circumstance from which an inference of guilt could have been drawn by the jury. Furthermore, the flight evidence explains what occurred subsequent to the commission of the offense. *See Wesbrook*, 29 S.W.3d at 115 ("This evidence is considered 'res gestae,' under the reasoning that events do not occur in a vacuum, and the jury has a right to hear what occurred immediately prior to and subsequent to the commission of that act so that it may realistically evaluate the evidence."); *see also Prible v. State*, 175 S.W.3d 724, 732 (Tex. Crim. App. 2005) (noting that same-transaction contextual evidence results when an extraneous matter is so intertwined with the State's proof of the charged crime that avoiding reference to it would make the State's case difficult to understand or incomplete).

Therefore, because flight is admissible as a circumstance from which an inference of guilt may be drawn, and because the flight evidence was admissible to show the context in which the criminal act occurred, we cannot say that a limiting instruction was required in this instance. *See Devoe*, 354 S.W.3d at 471; *Prible*, 175 S.W.3d at 732; *Castaldo*, 78 S.W.3d at 352; *see also Wesbrook*, 29 S.W.3d at 114-15. Further, we conclude that appellant has failed to establish that he was egregiously harmed by the trial court's failure

to include a limiting instruction as to the flight evidence. *See Almanza*, 686 S.W.2d at 171. We overrule appellant's third issue.

### V. APPELLANT'S REQUEST FOR ADDITIONAL PEREMPTORY STRIKES

In his fourth issue, appellant contends that the trial court committed reversible error by failing to grant him two additional peremptory strikes because two objectionable venire panel members were allowed to remain in the venire panel despite challenges for cause. Specifically, appellant argues that he was forced to waste two peremptory strikes on venirepersons who should have been removed by the trial court for legal cause.

### A. Applicable Law

The trial court's ruling on a challenge for cause is reviewed for abuse of discretion. *Russeau v. State*, 171 S.W.3d 871, 879 (Tex. Crim. App. 2005). "We afford the trial court considerable deference, because it is in the best position to evaluate a prospective juror's demeanor and responses." *Id.* "This is especially true when this Court is faced with a vacillating or equivocating venireperson." *Banda v. State*, 890 S.W.2d 42, 54 (Tex. Crim. App. 1994); *see Russeau*, 171 S.W.3d at 879. "The trial court is able to consider important factors such as demeanor and tone of voice that do not come through when reviewing a cold record." *Banda*, 890 S.W.2d at 54.

The Court of Criminal Appeals has held that a prospective juror may be properly challenged for cause and removed "if he cannot impartially judge the credibility of a witness." *Ladd v. State*, 3 S.W.3d 547, 560 (Tex. Crim. App. 1999); *see* TEX. CODE CRIM.

PROC. ANN. art. 35.16(a)(9) (West 2006). Potential jurors "must be open-minded and persuadable, with no extreme or absolute positions regarding the credibility of any witness." *Ladd*, 3 S.W.3d at 560. The fact that a prospective juror is more or less skeptical of a certain category of witness, however, does not make him subject to challenge for cause. *Id.* (stating that prospective jurors are not challengeable for cause "simply because they would give certain classes of witnesses a slight edge in terms of credibility"); *Jones v. State*, 982 S.W.2d 386, 389 (Tex. Crim. App. 1998) (holding that a prospective juror was not challengeable for cause simply because she stated she would be more skeptical of accomplice witnesses than of witnesses generally).

The Court of Criminal Appeals has also stated that:

> A defendant may challenge a potential juror for cause if he is biased or prejudiced or the law on which the State or defendant is entitled to rely. A trial judge must excuse the juror if bias or prejudice would impair the juror's ability to carry out his oath and instructions in accordance with the law. Before the judge excuses the prospective juror, the law must be explained to him and the challenger must show that the potential juror understood the law and still could not overcome his prejudice. To establish harm for an erroneous denial of a challenge for cause, the defendant must show on the record that: (1) he asserted a clear and specific challenge for cause; (2) he used a peremptory challenge on the complained-of venire member; (3) his peremptory challenges were exhausted; (4) his request for additional strikes was denied; and (5) an objectionable juror sat on the jury.

*Comeaux v. State*, 445 S.W.3d 745, 749 (Tex. Crim. App. 2014) (internal citations & quotations omitted).

**B.      Discussion**

At trial, appellant asserted that the trial court should have granted his challenges for cause as to Juror Numbers 41 and 47.  Instead, appellant had to exercise his peremptory strikes to eliminate Juror Numbers 41 and 47.  And because the trial court did not grant appellant's challenges for cause, and because the trial court did not grant appellant additional peremptory strikes, Juror Numbers 46 and 56 were seated on the jury.  Appellant argues on appeal that he would have struck Juror Numbers 46 and 56 from the venire panel had the trial court granted his challenges for cause to Juror Numbers 41 and 47.

During voir dire, Juror Number 41 stated that she had heard about the case in the newspaper; however, upon further questioning, Juror Number 41 acknowledged that her husband had read about the case in the newspaper and that her husband works in the Sheriff's Office.  Juror Number 41 denied having already made up her mind about the case because she did not "know anything about it."  Juror Number 41 also vaguely claimed "experience" with the subject matter and that she was uncomfortable with the subject matter.  However, she later stated that she could follow the law and be fair to appellant and the State.

Juror Number 47 informed the trial court that she had read an "article in the newspaper that they had picked him up from the airport."  She later clarified that the article stated that police "had gone to an airport to pick them up or two brother [sic] up

that were trying to leave. I didn't know the names of anybody." However, during questioning by the State, Juror Number 47 noted that she could set aside the newspaper article and listen to the evidence presented at trial and make a decision based only on such evidence.

Based on our review of the record, we cannot say that the trial court abused its discretion in denying appellant's challenges for cause. *See Russeau*, 171 S.W.3d at 879. While both Juror Numbers 41 and 47 had some prior knowledge of the case, both venirepersons stated that they could follow the law and base their decision solely on the evidence presented at trial. And to the extent that either juror wavered or vacillated in their answers, we emphasize that the trial judge is to be given "great deference" because "the trial judge is present to observe the demeanor of the venireperson and to listen to his tone of voice." *Feldman v. State*, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002); *see Russeau*, 171 S.W.3d at 879; *Banda*, 890 S.W.2d at 54. Therefore, because we have concluded that the trial court did not abuse its discretion in denying appellant's challenges for cause as to Juror Numbers 41 and 47, and because appellant's argument presupposes that the trial court erred in denying these challenges for cause, we cannot say that appellant has established harm under *Comeaux*. *See* 445 S.W.3d at 749. We overrule appellant's fourth issue.

## VI.   APPELLANT'S *BATSON* CHALLENGE

In his fifth and sixth issues, appellant complains that the trial court committed reversible error by denying his *Batson* challenges to Juror Numbers 8, 17, 19, and 45.  *See generally Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).  Appellant contends that the State improperly used its peremptory strikes to remove the first four African-Americans available on the venire panel for the final jury.

### A.   Applicable Law

In *Batson*, the United States Supreme Court held that, while a prosecutor ordinarily may exercise peremptory strikes for any reason related to his views concerning the outcome of the trial, "the Equal Protection Clause forbids the prosecutor to challenge potential jurors on account of their race."  476 U.S. at 89, 106 S. Ct. at 1719.  A *Batson* challenge to a peremptory strike consists of three steps:  (1) the opponent of the strike must establish a prima facie showing of racial discrimination; (2) the proponent of the strike must articulate a race-neutral explanation; and (3) the trial court must decide whether the opponent has proved purposeful racial discrimination.  *See Purkett v. Elem*, 514 U.S. 765, 767-68, 115 S. Ct. 1769, 1770-71, 131 L. Ed. 2d (1995); *Young v. State*, 283 S.W.3d 854, 866 (Tex. Crim. App. 2009).

Once the State proffers race-neutral explanations for its peremptory strikes, the burden is on the defendant to convince the trial court that the prosecution's reasons were not race-neutral. *Ford v. State*, 1 S.W.3d 691, 693 (Tex. Crim. App. 1999).  Thus, the burden

of production shifts from the defendant in step one to the State in step two; but the burden of persuasion never shifts from the defendant. *Id.* The trial court's ruling in the third step must be sustained on appeal unless it is clearly erroneous. *Grant v. State*, 325 S.W.3d 655, 657 (Tex. Crim. App. 2010) (citing *Snyder v. Louisiana*, 552 U.S. 472, 477, 128 S. Ct. 1203, 1207-08, 170 L. Ed. 2d 175 (2008)). "Because the trial court's ruling requires an evaluation of the credibility and demeanor of prosecutors and venire members, and because this evaluation lies peculiarly within the trial court's province, we defer to the trial court in the absence of exceptional circumstances." *Id.*; *see Watkins v. State*, 245 S.W.3d 444, 448 (Tex. Crim. App. 2008) ("[A] reviewing court should examine the trial court's conclusion that a facially race-neutral explanation for a peremptory challenge is genuine, rather than a pretext, with great deference, reversing only when the conclusion is, in the view of the record as a whole, clearly erroneous.").

## B.     Discussion

Here, appellant made a prima facie showing that the prosecutor's strike may have been racially motivated. However, the prosecutor responded to appellant's *Batson* challenges with race-neutral reasons for using preemptory strikes on Juror Numbers 8, 17, 19, and 45. Explanations for each of the aforementioned jurors are detailed below.

### 1.    Juror Number 8

With respect to Juror Number 8, the prosecutor noted that she was concerned about the relative youth—the fact that she was twenty-one years old—and the fact that Juror Number 8,

> didn't seem to understand—I asked her specifically whether people who abused children generally looked for someone who is a troubled child.  And she said, no.  I inquired further into it, and she didn't—either didn't understand what "troubled child" meant, or didn't want to—seemed to believe that people don't look for troubled children.  That is contrary to the State's contention in this case.

In response to the prosecutor's race-neutral explanation, appellant argued,

> Your Honor . . . I don't think that's a race-neutral reason.  I don't think it's a good reason at all.  I think it fails.  You're asking something about a troubled child and not getting a sufficient answer.  That was all she asked about.  I mean, other than that, I think we had her for a three.  And whether the kids tell the truth, which was a neutral answer.

Given this, we do not believe that appellant refuted the prosecution's explanation or demonstrated that the State's explanation was merely a pretext for discrimination.  *See Williams v. State*, 301 S.W.3d 675, 688 (Tex. Crim. App. 2009); *Ford*, 1 S.W.3d at 693.  In fact, notwithstanding Juror Number 8's apparent confusion about the law the State intended to rely upon, several Texas courts have held that age is an acceptable explanation for a peremptory strike and does not violate *Batson*.  *See Brown v. State*, 960 S.W.2d 265, 269 (Tex. App.—Corpus Christi 1997, no pet.) (holding that age is an acceptable explanation for a peremptory strike and does not violate *Batson*); *Silva v. State*, 800 S.W.2d 912, 914-15 (Tex. App.—San Antonio 1990, no pet.); *Moss v. State*, 790 S.W.2d

731, 732 (Tex. App.—Houston [14th Dist.] 1990, no pet.); *see also Torres v. State*, No. 10-12-00263-CR, 2014 Tex. App. LEXIS 6354, at \*\*6-7 (Tex. App.—Waco June 12, 2014, no pet.) (mem. op., not designated for publication) (concluding that the State provided a race-neutral reason for striking jurors under the age of twenty-five because "they simply do not have enough life experience to properly serve on this jury"); *Wilson v. State*, No. 06-04-00031-CR, 2004 Tex. App. LEXIS 8118, at \*\*6-7 (Tex. App.—Texarkana Sept. 3, 2004, no pet.) (mem. op., not designated for publication) (noting that age is an acceptable explanation for a peremptory strike and does not violate *Batson*). Therefore, according great deference to the trial court's denial of appellant's *Batson* challenge as to Juror Number 8, we cannot say that, based on our review of the record, the trial court's ruling is clearly erroneous. *See Snyder*, 552 U.S. at 477, 128 S. Ct. at 1207-08; *Grant*, 325 S.W.3d at 657; *Watkins*, 245 S.W.3d at 448; *see also Landrum v. State*, No. 10-13-00281-CR, 2014 Tex. App. LEXIS 10194, at \*4 (Tex. App.—Waco Sept. 11, 2014, pet. ref'd) (mem. op., not designated for publication).

### 2. Juror Number 17

Regarding Juror Number 17, the prosecutor asserted the following:

> For No. 17 . . . my first issue with her was, she answered that she—you can tell by looking at a child whether they are lying. She went—she came in and was very friendly with [defense counsel]. I believe she grabbed his arm and acknowledged him. She also finally, said she was okay sitting on this kind of case. And that always causes me concern when someone that doesn't even have any trouble whatsoever listening to cases of children who have been sexually abused. That caused me concern. So for those reasons I struck her.

Appellant responded by asserting the following:

As far as . . . No. 17, we actually brought her in. I don't recognize anything about her trying to touch my arm. I don't know this lady at all. Never met her in my life. Umm. I was actually calling her in to challenge her for cause. Asked her the questions, and she said, "No, I didn't say that." So, I didn't take—I just withdrew my challenge. The State had an opportunity to question and make a challenge for cause at that time—didn't do so. So that tells me that they weren't interested in trying to get rid of her or they would have attempted to at that time.

Based on this response, and considering that the trial court was in the best position to evaluate the credibility and demeanor of Juror Number 17 and the attorneys in the case, we cannot say that appellant has sufficiently refuted the prosecutor's explanation or demonstrated that the State's explanation was merely a pretext for discrimination. *See Williams*, 301 S.W.3d at 688; *see also Ford*, 1 S.W.3d at 693. In other words, according great deference to the trial court's denial of appellant's *Batson* challenge as to Juror Number 17, we cannot say that, based on our review of the record, the trial court's ruling is clearly erroneous. *See Snyder*, 552 U.S. at 477, 128 S. Ct. at 1207-08; *Grant*, 325 S.W.3d at 657; *Watkins*, 245 S.W.3d at 448; *see also Landrum*, 2014 Tex. App. LEXIS 10194, at *4.

### 3. Juror Number 19

The prosecutor also provided the following explanation for striking Juror Number 19:

For No. 19 . . . he grew up with the defendant—the Defense attorney and we—we struck him for that reason. We were familiar—umm—the Kerens community is a very small community, and he grew up with [defense counsel]. And that we—it caused us concern that—what [defense counsel]

has to say to [Juror Number 19], he would trust [defense counsel] over the State.

With regard to Juror Number 19, appellant contended that: "[T]he fact that he grew up in the same town as I did is not a race-neutral reason to get rid of him. They need a better reason than that, Your Honor." However, we do not believe that this response sufficiently refutes the prosecutor's explanation or demonstrates that the State's explanation was merely a pretext for discrimination. *See Williams*, 301 S.W.3d at 688; *see also Ford*, 1 S.W.3d at 693. It merely indicates appellant's disagreement with the State's explanation. Therefore, according great deference to the trial court's denial of appellant's *Batson* challenge, we cannot say that, based on our review of the record, the trial court's ruling is clearly erroneous. *See Snyder*, 552 U.S. at 477, 128 S. Ct. at 1207-08; *Grant*, 325 S.W.3d at 657; *Watkins*, 245 S.W.3d at 448; *see also Landrum*, 2014 Tex. App. LEXIS 10194, at *4.

### 4. Juror Number 45

And finally, the prosecutor explained that Juror Number 45 was struck for the following reason:

> And for No. 45—umm—Judge, we were very concerned when he came in. He discussed that he had been the outcry witness—umm—for a girl against a guy. And his explanation of that—uh—he said that they did not pursue charges. And that caused me concern that he's not necessarily very protective of children. Umm. He also seemed—umm—to indicate he was very familiar with a—with child placement services. And it caused me concern that someone who doesn't seem to be that interested in protecting children could be looked at by—as an expert by the other jury members— umm—as someone who routinely works with children in child placement

and that—umm—his attitude of not caring for children who are sexually abused would be passed onto them. So that's the reason we struck him.

Appellant responded, "I think they brought [Juror Number 45] in themselves, and they didn't challenge [him] for cause. If they wanted to get rid of him, they could have challenged [him] for cause. The only reason they got rid of him is because he's a black man."

Once again, we conclude that appellant's response does not sufficiently refute the prosecutor's explanation or demonstrate that the State's explanation was merely a pretext for discrimination. *See Williams*, 301 S.W.3d at 688; *see also Ford*, 1 S.W.3d at 693. In fact, in our analysis of appellant's *Batson* complaint, it makes no difference whether the State challenged Juror Number 45 for cause. Indeed, the United States Supreme Court has specifically stated that "the prosecutor's [race-neutral] explanation need not rise to the level justifying exercise of a challenge for cause." *Batson*, 476 U.S. at 97, 106 S. Ct. at 1723. Therefore, according great deference to the trial court's denial of appellant's *Batson* challenge, we cannot say that, based on our review of the record, the trial court's ruling is clearly erroneous. *See Snyder*, 552 U.S. at 477, 128 S. Ct. at 1207-08; *Grant*, 325 S.W.3d at 657; *Watkins*, 245 S.W.3d at 448; *see also Landrum*, 2014 Tex. App. LEXIS 10194, at *4.

Because we have concluded that the trial court's denials of appellant's *Batson* challenges to Juror Numbers 8, 17, 19, and 45 are not clearly erroneous, we overrule appellant's fifth and sixth issues.

## VII.  CONCLUSION

Having overruled all of appellant's issues on appeal, we affirm the judgment of

the trial court.


AL SCOGGINS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed August 27, 2015
Do not publish
[CRPM]

